**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**STEPHANIE STUBBS**                                                                 **PLAINTIFF**

**V.**                                         **CIVIL ACTION NO. 1:09-CV-00135-SA-JAD**

**WASTE MANAGEMENT OF MISSISSIPPI, INC.**                        **DEFENDANT**


**MEMORANDUM OPINION**

Before the Court is Defendant's Motion for Summary Judgment [31].  For the reasons stated below, the motion is granted.

**I. BACKGROUND**

Plaintiff, Stephanie Stubbs, filed this action under Title VII, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981, alleging race and gender discrimination by her former employer, Waste Management of Mississippi, Incorporated.[1]  Plaintiff, an African-American female, was hired by Waste Management in 2007 as a Customer Service Representative ("CSR") in Defendant's Tupelo, Mississippi call center.  Plaintiff, as a CSR, handled in-bound phone calls from customers.  In January of 2008, Defendant created a new team in the call center, the Customer Engagement Team ("CET"), to field out-bound calls to ensure that customer's needs had been met.  The team was comprised of four individuals: Plaintiff, another African-American female (Shalesha Garmon), and

---

[1] Plaintiff's Amended Complaint stated that Plaintiff "endured harassment" at work after "she filed a complaint about the [alleged] discrimination."  To the extent Plaintiff was attempting to bring a claim for harassment, hostile work environment, retaliation, and/or constructive discharge based on Plaintiff's own resignation, Plaintiff has conceded these claims in her Brief in Opposition to Defendant's Motion for Summary Judgment, stating that Plaintiff has "only sued for race and gender discrimination in relation to her promotion/demotion/compensation for the CET."

two Caucasian males (Michael Hill and Jason Anthony).  Members of the CET were still located on the call center floor, and Plaintiff continued to maintain her prior duties and responsibilities as a CSR answering in-bound calls as needed.  Plaintiff alleges that she was verbally informed that being a member of the CET was a promotion, and that she would receive a pay raise.  However, Plaintiff admits that her rate of pay remained the same during her tenure with the CET.

Around June of 2008, Plaintiff was reassigned to her original CSR position, and she began handling in-bound calls once again. Plaintiff alleges this reassignment was a demotion; however, Plaintiff admits that she was never informed that it was a demotion.  Further, Plaintiff admits that her rate of pay increased after being moved back to her original position.  Defendant claims that after a productivity analysis, it was decided that all of the CET's duties could be handled by one person. Hill, a Caucasian male, remained in the CET position. Defendant asserts that due to Hill's productivity level, he could perform enough of the team's duties to maintain the CET's objectives. As a result of this change, Plaintiff, Garmon, and Anthony were to return to their in-bound call duties.  Anthony subsequently applied for a sales position and was hired.[2]

In June of 2008, Plaintiff called in a complaint to Defendant's integrity line, alleging that she was discriminated against based on her race and gender due to Defendant's decision to return her, but not Hill, back to her original CSR position of answering in-bound calls.  In response to this, there was an investigation, which concluded that Plaintiff's allegation were without merit.  On September 26, 2008, Plaintiff resigned from Waste Management.

Plaintiff, after filing a charge with the EEOC and receiving her right to sue letter, filed this suit on May 19, 2009.  Defendant filed its Motion for Summary Judgment on July 21, 2010, arguing

---

[2] It appears that Anthony was the only employee who applied for the sales position.

it is entitled to judgment as a matter of law on Plaintiff's claims of race and gender discrimination.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate when the evidence shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Salinas v. AT & T Corp., 314 F. App'x 696, 697 (5th Cir. 2009) (quoting FED. R. CIV. P. 56(c)). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." Agnew v. Washington Mut. Fin. Group, LLC, 244 F. Supp. 2d 672, 675 (N.D. Miss. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

If a movant shows there is no genuine issue of material fact, the nonmovant must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting FED. R. CIV. P. 56(c), (e)). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." Oliver v. Scott, 276 F.3d 736, 744 (5th Cir. 2002).

The court is not to weigh the evidence or engage in credibility determinations. Anderson, 477 U.S. at 249, 106 S. Ct. 2505; Deville v. Marcantel, 567 F.3d 156, 164 (5th Cir. 2009). "[T]he court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Deville, 567 F.3d at 164.

### III. DISCUSSION

Plaintiff brings her gender discrimination claim under Title VII and brings her race discrimination claim under Title VII and Section 1981.   In the Fifth Circuit, "[e]mployment discrimination claims brought under 42 U.S.C. § 1981 . . . are analyzed under the evidentiary framework applicable to claims arising under Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. section 2000e, *et seq*."   Lawrence v. Univ. of Texas Med. Branch at Galveston, 163 F.3d 309, 311 (5th Cir. 1999); LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 448 n.2 (5th Cir. 1996) ("Claims of racial discrimination brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII.").   Since Plaintiff's race and gender discrimination claims arise from the exact same facts and events, her alleged demotion from the CET to her original position as a CSR, those causes of action are discussed in tandem here.

Plaintiff offers no direct proof of discrimination in this case, instead seeking to prove her case circumstantially based on the standards set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Under the McDonnell Douglas standard, Plaintiff must first establish a prima facie case of discrimination by establishing that she was (1) a member of a protected group; (2) qualified for the position she held; (3) that she suffered an adverse employment decision; and (4) either replaced by someone outside the protected group or treated less favorably than employees not in the protected group. Okote v. Univ. of Tex. Houston Health Sci. Ctr., 225 F.3d 507, 513 (5th Cir. 2001).   Proof of disparate treatment can establish the fourth element of the plaintiff's prima facie case. See Bryant

4

v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005). "To raise an inference of discrimination, the plaintiff may compare [her] treatment to that of nearly identical, similarly situated individuals." Id.

Once a plaintiff has made her prima facie case, the defendant then has the burden of producing a legitimate, nondiscriminatory motive for the adverse employment action. Parker v. State of La. Dep't of Educ. Special Sch. Dist., 323 F. App'x. 321, 327 (5th Cir. 2009). The defendant's burden at this stage is merely one of production-not persuasion. Id.

If the defendant can articulate a reason that, if believed, would support a finding that the action was nondiscriminatory, then the inference of discrimination created by the plaintiff's prima facie case disappears, and the factfinder must decide the ultimate question of whether the plaintiff has proven intentional discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511-12, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). The plaintiff must present substantial evidence that the employer's proffered reason is a pretext for discrimination. Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003). To show pretext on summary judgment, "the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002).

Pretext may be established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" Laxton, 333 F.3d at 578 (quoting Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)). "To raise an inference of discrimination, the plaintiff may compare his treatment to that of nearly identical, similarly situated individuals." Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005). To establish disparate treatment, however, a plaintiff must

5

show that the employer gave preferential treatment to another employee under "nearly identical" circumstances." Id.  Alternatively, "[a]n explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." Laxton, 333 F.3d at 578.

In contrast, the Fifth Circuit has modified the McDonnell Douglas formulation to permit proof that discrimination was one motivating factor among others for an adverse employment action. See generally Rachid v. Jack in the Box, Inc., 376 F.3d 305 (5th Cir. 2004).  At one time, the Fifth Circuit required that a plaintiff present direct evidence of discrimination in order to receive the benefit of a mixed-motive analysis. See Fierros v. Tex. Dep't of Health, 274 F.3d 187, 191 (5th Cir. 2001).  However, the Supreme Court in Desert Palace, Inc. v. Costa held that Congress's failure to require a heightened burden of proof suggested that courts should not depart from the general rule of civil litigation that "requires a plaintiff to prove his case 'by a preponderance of the evidence,' using 'direct or circumstantial evidence.'" 539 U.S. 90, 99, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003) (quoting Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 714 n. 3, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983)). Therefore, a plaintiff asserting a Title VII discrimination claim may utilize the mixed-motive analysis whether she has presented direct or circumstantial evidence of discrimination. Id. at 101, 123 S. Ct. 2148; Smith v. Xerox Corp., 602 F.3d 320, 327-28 (5th Cir. 2010).

Whether summary judgment is appropriate in a Title VII case "depends on numerous factors, including 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered.'" Price, 283 F.3d at 720 (quoting Reeves, 530 U.S. at 148-49, 120 S. Ct. 2097).  Further, "[t]he plaintiff always has the . . . ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." Warren v. City of Tupelo, 332

6

F. App'x 176, 180 (5th Cir. 2009) (punctuation omitted) (quoting <u>Tex. Dep't of Comty. Affairs v.</u>

<u>Burdine</u>, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)).

<u>A.</u>      <u>Plaintiff's Prima Facie Case</u>

There is no material dispute regarding the first, second, and fourth elements of Plaintiff's

prima facie case: Plaintiff is an African-American female, she was minimally qualified, and a

Caucasian male remained in the position with the CET.  However, there is a dispute as to whether

Plaintiff suffered an employment decision which was actually "adverse."

In the Fifth Circuit, "to establish a demotion, an employee must show a loss in duties,

benefits, or compensation."  <u>Peterson v. City of Dallas</u>, 135 F. App'x 635, 638 (5th Cir. 2005); <u>see</u>

<u>also</u> <u>Pegram v. Honeywell, Inc.</u>, 361 F.3d 272, 278 (5th Cir. 2004).  While, to be equivalent to a

demotion, a transfer "need not result in a decrease in pay, title, or grade," the new position must

"prove[] objectively worse." <u>Sharp v. City of Houston</u>, 164 F.3d 923, 933 (5th Cir. 1999); <u>see also</u>

<u>Hunt v. Rapides Healthcare Sys., LLC</u>, 277 F.3d 757, 771 n. 8 (5th Cir. 2001) ("[T]he focus is on

the objective qualities of the positions, rather than an employee's subjective preference for one

position over another. That subjective preference, alone, is an insufficient basis for finding an

adverse employment action.").

In <u>Serna v. City of San Antonio</u>, the Fifth Circuit concluded that the evidence was

insufficient to establish that the transfer of an officer from the Downtown Foot and Bike Patrol Unit

to a regular patrol unit in another part of San Antonio was a demotion. 244 F.3d 479, 483-85 (5th

Cir. 2001).  Although "the evidence at trial tended to show . . . that the Downtown Foot and Bike

Patrol Unit was more prestigious than other patrol units and that some officers preferred its tactics

to those of other patrol units," the court nevertheless held that "[t]here was no evidence to suggest

that a transfer to a regular patrol unit was generally considered to be a demotion or any kind of punishment." Id. at 484. In so holding, the court focused on the following facts: (1) Serna suffered no loss of pay or benefits; (2) there was no objective evidence that his promotional opportunities were hampered by the transfer; (3) most of his fellow officers worked in regular patrol units and spent substantial portions of their careers in such units, and there was no evidence that the regular patrol unit was an objectively worse assignment; and (4) "all Serna's testimony established was that he felt stigmatized and injured by his transfer," but this negative perception of the move was purely subjective and not shared by other officers. Id. at 484-85.  The court further noted that unlike the officers in Click v. Copeland, 970 F.2d 106 (5th Cir. 1992) and Forsyth v. City of Dallas, 91 F.3d 769 (5th Cir. 1996), where the court found evidence of an adverse employment decision, Serna presented no evidence that "regular patrol assignments were considered punishment or even that they were considered less desirable generally" or that "officers were clamoring to get out of regular patrol assignments." Id. at 485. Thus, the totality of the circumstances in Serna did not support a finding that the transfer was the objective equivalent of a demotion. Id. at 484-85.

In this case, Plaintiff claims that she was demoted when she returned to her original CSR position.  Plaintiff resumed working as a CSR, answering in-bound calls, after the CET was merged into one person.  As in Serna, Plaintiff's benefits, pay, and hours remained the same.  Indeed, Plaintiff actually received a merit increase after she resumed working as a CSR, meaning she was making more money than she was making as part of the CET.  When Plaintiff was part of the CET, she retained some of the same job duties as before.  Likewise, Plaintiff testified that when she returned to her CSR position, she retained some of the job duties she had as part of the CET.  Also as in Serna, there is no objective evidence that Plaintiff's promotional opportunities were hampered

8

or would have been hampered if Plaintiff had not resigned.  In addition, unlike as in <u>Click</u> and <u>Forsyth</u>, there is no evidence that the move from the CET back to CSR was considered "punishment."  The only change Plaintiff endured, besides an *increase* in her pay, was a slight variation in duties (*i.e.*, answering in-bound instead of out-bound phone calls), although she admits many duties remained the same.  Plaintiff's minor variations in duties and subjective preference to remain part of the CET is not sufficient to establish an adverse employment decision. <u>See</u> <u>Pegram</u>, 361 F.3d at 284. Title VII does not address "every decision made by employers that arguable might have some tangential effect upon those ultimate decisions." <u>Burger v. Cent. Apartment. Mgmt.</u>, 168 F.3d 875, 878 (5th Cir. 1999).

Plaintiff also appears to be alleging that she was discriminated against in the amount of pay she received as a result of being part of the CET.  While there is no evidence of this, Plaintiff alleges that after she resumed her CSR duties, Hill and Anthony told her that they received an increase in pay.  However, Plaintiff admits she has no personal knowledge of any pay changes during the time she was part of the CET.  Furthermore, Defendant affirmatively testified that no one's pay increased while part of the CET or because of the CET.  The confusion regarding pay appears to be two-fold. First, employees, including Plaintiff, are regularly given merit increases.  Defendant testified that merit increases are based on performance; thus, not every employee receives the same amount of increase.[3]  While other employees might have received a slightly higher increase than Plaintiff due to a performance analysis, there is no evidence such a merit increase was in any way related to being part of the CET, especially given the fact that other employees not part of the CET were eligible and

---

[3] Plaintiff is not challenging Defendant's system of granting merit increases. Rather, Plaintiff expressly asserts that its compensation claim relates only to the CET position.

received such merit increases.  In fact, the merit increases were given *after* the CET was merged into one person.  Additionally, Hill was given an increase in pay to achieve wage parity with other CSRs since he was not eligible for a performance bonus, and Anthony applied for and received a sales position job, a job Plaintiff did not apply for; therefore, his pay may have altered accordingly.  There is no evidence, other than Plaintiff's own allegations in her deposition, that any pay disparity occurred while Plaintiff was part of the CET.  Likewise, there is no evidence that any pay disparity or increase was based on any factor related to race and/or gender.

The Court is of the opinion that while Plaintiff might have preferred to stay on the CET instead of resuming her original CSR duties, this slight change does not qualify as an adverse employment decision.  Plaintiff has not satisfied her burden of establishing a prima facie case of race or gender discrimination.

B.    Defendant's Legitimate, Nondiscriminatory Reason

However, assuming that Plaintiff had established a prima facie case of discrimination, Defendant must then articulate a legitimate, nondiscriminatory reason for its employment action. Defendant asserts that its reason for the variation in Plaintiff's job duties is because the productivity of the CET was analyzed, and it was decided that the out-bound calls could be handled by a single individual, as opposed to a team of four.  Defendant states that Hill was selected to stay on the CET due to his productivity level and his exceeding call center goals and expectations.  This articulated reason satisfies Defendant's burden.

C.      Pretext[4]

With the Defendant having proffered a legitimate, nondiscriminatory reason, the burden is

shifted to Plaintiff to prove that Defendant's proffered reason is pretext for discrimination by

presenting evidence of disparate treatment or by showing that the employer's explanation is false or

unworthy of credence.  Plaintiff attempts to show pretext by questioning Defendant's reasoning

regarding what happened to the CET, asserting that Hill should not have been selected to remain part

of the CET, and alleging that the two Caucasian males made more and were given more specific job

duties.

In relation to the CET being merged into one person, Plaintiff alleges that the Defendant

changed its story regarding what happened with the CET and whatever Defendant did with the CET

is a question of fact for the jury.  There is no such evidence of this, other than Plaintiff's bare

allegations.  The record shows that Defendant at all times has asserted that the CET was merged into

one person based on a productivity review.  Thus, there is no question of fact regarding the CET for

---

[4] In this case, Plaintiff relies *solely* on a "pretext" theory. Under this "third step" of the burden-shifting framework, Plaintiff, "instead of arguing pretext, . . . could have proceeded under a 'mixed-motive' theory." Arey v. Watkins, 2010 WL 2764731, at *3 n.2 (5th Cir. July 14, 2010). In the Fifth Circuit, it appears to be incumbent upon a plaintiff to actually raise mixed-motive arguments in order to have them considered at the summary judgment stage. See Septimus v. Univ. of Houston, 399 F.3d 601, 607 n.7 (5th Cir. 2005) (refusing to consider whether the Supreme Court's decision in Desert Palace, 539 U.S. 90, 123 S. Ct. 2148 or the Fifth Circuit's decision in Rachid, 376 F.3d 305, would affect the case because the parties relied on pretext rather than mixed motive); Strong v. Univ. HealthCare Sys., L.L.C., 482 F.3d 802, 805 (5th Cir. 2007) (applying "but for" causation standard on summary judgment in retaliation case where plaintiff had relied solely on a pretext theory); Vaughner v. Pulito, 804 F.2d 873, 877 n.2 (5th Cir. 1986) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and *cannot be considered* or raised on appeal") (emphasis added); Arey, 2010 WL 2764731, at *3 n.2 (citing Vaughner, 804 F.2d at 877 n.2 and finding that the plaintiff's mixed-motive theory was "waived" because plaintiff "did not raise such a theory in the district court.").

the jury to review.

Next, Plaintiff asserts that Anthony and Hill were given more specific job duties while part of the CET.  While there is no actual proof of this, Plaintiff admits that the reasoning for such was because the specific tasks and jobs each individual would perform were still being figured out.  If Hill and/or Anthony ever did perform more specific duties, Plaintiff presents no evidence that any decision was based on race or gender.  Further, Plaintiff, in her deposition, subsequently admits that "[e]veryone would do the same jobs."

Plaintiff also alleges that Hill and Anthony both remained in the CET position, while she and Garmon resumed their CSR duties.  There is no evidence that Anthony remained in the CET position.  Rather, the only evidence presented is that Anthony, like Plaintiff and Garmon, was removed from the CET, and then he subsequently applied for and received an entirely different position at Waste Management.  Plaintiff further questions Defendant's decision to retain Hill in the CET; however, Plaintiff never challenges Defendant's reasoning regarding Hill's productivity.[5] Plaintiff actually admits that she has no knowledge of Hill's job performance.  Further, when asked why Plaintiff finds it discriminatory to allow Hill to continue to work in the CET, Plaintiff states that it is discriminatory "because of his race."  Such conclusory allegations are not probative of pretext, especially given that Plaintiff never asserts that Defendant's analysis of Hill's productivity is false or unworthy of credence.

While Defendant does not assert Plaintiff's performance issues and related discipline as part

---

[5] In regards to Plaintiff's gender discrimination claim, it is noteworthy that the two individuals who decided to retain Hill in the CET position are both female.

of its legitimate, nondiscriminatory reason, such issues are generally discussed in Defendant's Motion for Summary Judgment, and Plaintiff attempts to use such as evidence of pretext.  There is documented evidence in Defendant's records that Plaintiff encountered various performance and disciplinary issues.   For example, Defendant presented various documents showing: (1) a disciplinary action regarding Plaintiff's falsification of information; (2) evidence that Plaintiff had occasional attendance and tardiness problems; (3) testimony that Plaintiff's performance while part of the CET trailed the other team members, including Hill; (4) evidence that Plaintiff made errors in the system; and (5) a disciplinary action regarding Plaintiff's use of a cell phone in violation of Defendant's policy.  Plaintiff does not contradict such performance or disciplinary issues; rather, Plaintiff only states that, even though Plaintiff had some problems related to work attendance, her attendance was still not considered poor according to the company's policy.  While this might be true, this assertion alone does not evidence pretext.  This is especially true given that (1) Plaintiff does not refute any other allegations of Plaintiff's performance/discipline issues; (2) Defendant never even asserted Plaintiff's attendance or performance as part of its legitimate, nondiscriminatory reason; and (3) Plaintiff never challenges Defendant's reasoning regarding Hill's productivity level or even Defendant's initial decision to merge the CET into one person.

Plaintiff's evidence is legally insufficient to establish that she was subjected to an adverse employment decision, or that Defendant's legitimate, nondiscriminatory reason was pretext for discrimination.

## IV. CONCLUSION

For the reasons stated above, the Court grants Defendant's Motion for Summary Judgment

as to Plaintiff's Title VII race and gender discrimination claims.

So ordered on this, the _20th__ day of September, 2010.


**/s/   Sharion Aycock**
**UNITED STATES DISTRICT JUDGE**